# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

## PEOPLE v WILSON

Docket No. 146480. Argued December 10, 2013 (Calendar No. 8). Decided June 18, 2014.

Dwayne E. Wilson was charged in the Macomb Circuit Court, Matthew Switalski, J., with first-degree premeditated murder, MCL 750.316(1)(a); first-degree felony murder, MCL 750.316(1)(b); first-degree home invasion, MCL 750.110a(2); second-degree murder, MCL 750.317; assault with intent to commit great bodily harm less than murder, MCL 750.84; felony-firearm, MCL 750.227b; and two counts of unlawful imprisonment, MCL 750.349b. The first-degree home invasion was the only predicate offense that supported the felony-murder charge. The jury found defendant guilty on all counts except the charges of first-degree premeditated murder and first-degree home invasion. Defendant appealed. The Court of Appeals, SAAD, P.J., and JANSEN and K. F. KELLY, JJ., reversed his convictions in an unpublished opinion per curiam, issued May 10, 2011 (Docket No. 296693), holding that the trial court had committed error by denying defendant's constitutional right to represent himself, and remanded the case for a new trial. The Supreme Court denied the prosecution's application for leave to appeal. 490 Mich 861 (2011). The prosecution subsequently filed an amended information that set forth as charges all the offenses that defendant had initially been convicted of. Defendant moved to dismiss the felony-murder charge, arguing that the Double Jeopardy Clause prevented a second prosecution on that charge because he had previously been acquitted of the only predicate felony for that crime, the predicate crime being one of the elements of felony murder. The trial court granted defendant's motion to dismiss, agreeing that a second jury could not reconsider the home-invasion element of felony murder given the preclusive effect of defendant's acquittal of first-degree home invasion. Following the granting of the prosecution's interlocutory application for leave to appeal, the Court of Appeals, MURPHY, C.J., and O'CONNELL and WHITBECK, JJ., reversed in an unpublished opinion per curiam, issued November 15, 2012 (Docket No. 311253), reinstated the felony-murder charge, and remanded the case. Citing *United States v Powell*, 469 US 57 (1984), for the proposition that a jury has the prerogative to return inconsistent verdicts, the panel held that because the jury's verdict had been inconsistent, the inconsistency negated the application of the collateral-estoppel doctrine to the second prosecution. The Supreme Court granted defendant leave to appeal. 494 Mich 853 (2013).

In an opinion by Justice MCCORMACK, joined by Chief Justice YOUNG and Justices CAVANAGH and KELLY, the Supreme Court *held*:

The collateral-estoppel strand of the Double Jeopardy Clause prevents the prosecution from charging a defendant with felony murder a second time when the defendant was convicted in the first trial of felony murder but was acquitted of the only predicate felony that supported the felony-murder charge and the felony-murder conviction was subsequently vacated.

1. The Double Jeopardy Clause of the Fifth Amendment protects defendants against the threat of successive prosecutions for the same offense and multiple punishments for the same offense. Collateral estoppel, also known as issue preclusion, is a common-law doctrine that requires that once a court has decided an issue of fact or law necessary to its judgment, the decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. Double jeopardy and collateral estoppel conceptually overlap, and in *Ashe v Swenson*, 397 US 436 (1970), the United States Supreme Court constitutionalized collateral estoppel within the Fifth Amendment's guarantee against double jeopardy. *Ashe* involved a defendant who had been tried and acquitted of robbing one member of a poker game and was subsequently charged with and convicted of the robbing a different poker player. Considering the question of whether a rational jury could have grounded its verdict on an issue other than that which the defendant sought to foreclose from consideration, *Ashe* held that the single rationally conceivable issue in dispute before the jury was whether the defendant had been one of the robbers and that the second prosecution, which necessarily required relitigating this already determined issue, violated the Fifth Amendment. *Yeager v United States*, 557 US 110 (2009), involved a jury that acquitted the defendant of various fraud charges but could not reach a verdict on insider-trading charges. The acquittals and hung counts were therefore logically inconsistent because to have acquitted the defendant of the fraud counts, the jury would have had to decide that he had not possessed insider information, which should have led a rational jury to also acquit him of the insider-trading charges. *Yeager* held that this apparent inconsistency did not change the preclusive force of the acquittal under the Double Jeopardy Clause in a second prosecution because a hung count was not legally meaningful and could not defeat the preclusive force of the acquittals.

2. *Dunn v United States*, 284 US 390 (1932), held that inconsistent verdicts within a single jury trial are permissible because they might have been the result of compromise or a mistake on the part of the jury, but verdicts cannot be upset by speculation or inquiry into those matters. Inconsistent verdicts do not require reversal because juries are not held to any rules of logic and are not required to explain their decisions. *Powell* reaffirmed this principle in the situation of a defendant who had been acquitted of the predicate felony but convicted of the compound felony and argued that the principles of collateral estoppel should be incorporated into an inconsistent-verdict case.

3. Because *Powell* involved an appeal from a single trial, no double jeopardy concerns were present. While the verdict in *Powell* was inconsistent, the doctrine of collateral estoppel was not relevant. Collateral estoppel, like double jeopardy more broadly, necessarily presupposes some passage of time between a final adjudication of an issue at one time and the threat of a subsequent adjudication of the same issue. The Court of Appeals apparently extrapolated from *Powell* the proposition that application of collateral estoppel is only appropriate when there was a prior consistent verdict. Since *Powell* did not concern a second prosecution, however, and therefore no double jeopardy concerns were implicated, the Court of

Appeals' reliance on *Powell* to authorize charging defendant with felony murder a second time was misplaced given that his objection sounded in double jeopardy, not the inconsistency of his initial verdict.

4. *Yeager* embodied the proposition that if an issue has been finally resolved at one moment in time, the same issue cannot be resolved differently at a subsequent time. Defendant was acquitted of first-degree home invasion (the only predicate felony that could support a conviction of felony murder and was therefore an element of felony murder), a charge that defendant again faced. Convicting him of felony murder would require the same factual basis as home invasion (of which he had been previously and finally acquitted), which *Yeager* prevents. Given that defendant had been acquitted of home invasion, the prosecution was barred from charging him with that crime again, even though a legal error at his first trial required vacating his convictions. The inconsistency in defendant's initial jury verdict did not alter this fundamental principle given the subsequent appellate reversal of all his convictions. The initial guilty verdicts were gone. Although defendant had been convicted of felony murder, that conviction had since been vacated because it was constitutionally infirm and defendant no longer stood convicted of that crime. The only final adjudication that would carry into his second trial would be his acquittal of first-degree home invasion, which must be given effect in the retrial under the collateral-estoppel prong of double jeopardy. Defendant's reversed felony-murder conviction here must be treated exactly as the hung counts were treated in *Yeager*. Neither a hung count nor a count that is reversed on appeal can defeat the preclusive effect of an acquittal. Like a hung count, a reversed count is not a final adjudication; by operation of law, the finality of the conviction has been undone. When a legal error requires the reversal of a defendant's convictions, those convictions are no longer adjudications at all. Reversal for trial error, as distinguished from evidentiary sufficiency, does not constitute a decision to the effect that the prosecution failed to prove its case. It implies nothing with respect to the guilt or innocence of the defendant. The same is not true of a defendant's acquittal. An acquittal is never recast or disturbed, no matter what error might have produced it. Defendant would begin his second trial in this case with only one perfected adjudication: his acquittal of first-degree home invasion. The prosecution would be free to retry defendant on all the other vacated convictions, but the Double Jeopardy Clause collaterally estopped a new prosecution for felony murder.

Reversed and remanded.

Justice MARKMAN, joined by Justices ZAHRA and VIVIANO, dissenting, would have affirmed the judgment of the Court of Appeals and permitted the prosecution to retry defendant for first-degree felony murder. Principles of collateral estoppel apply only when a defendant can demonstrate that a rational jury resolved an issue of ultimate fact in the defendant's favor. To prevail on his collateral-estoppel argument, defendant had to demonstrate that the first jury actually and necessarily determined that he had not engaged in conduct satisfying the elements of the predicate offense of first-degree home invasion. When a jury has rendered an inconsistent verdict, however, a defendant is unable to establish that the jury actually and necessarily determined any issue of ultimate fact. Defendant's jury rendered an inconsistent verdict in this case by convicting him of the compound offense of first-degree felony murder while acquitting him of the predicate offense of first-degree home invasion. Accordingly, defendant was unable to satisfy his burden of establishing that the jury actually and necessarily determined an issue of

ultimate fact in his favor. That defendant's conviction on the compound offense was subsequently overturned does not alter what factual determinations the jury actually and necessarily resolved in defendant's favor. Despite the majority's holding to the contrary, *Yeager* was decided in accordance with the holdings of *Powell* and *Dunn* because *Yeager* merely held that a verdict containing acquittals and hung counts is not a truly inconsistent verdict that obviates the use of principles of collateral estoppel. Thus *Yeager* did not require the result that the majority reached in this case. In addition, the majority's conclusion stood apart from the holdings of all other courts that had addressed the issue and was detached from 80 years of federal caselaw concerning constitutional principles of collateral estoppel.

©2014 State of Michigan

# Opinion

Chief Justice:    Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED June 18, 2014

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                      No. 146480

DWAYNE WILSON,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MCCORMACK, J.

As this case implicates more than one somewhat complex legal doctrine, it may be useful first to state the practical question we confront in as plain English as possible: Can a defendant whose conviction for felony murder has been reversed on appeal be retried for that charge when he was also acquitted of the only felony that supported it?

As detailed below, this case turns on the protection afforded by the Double Jeopardy Clause of the United States Constitution. US Const, Am V. This clause protects a criminal defendant from multiple prosecutions and multiple punishments for the same offense. This case also implicates the doctrine of collateral estoppel, which in

general imports a final determination from one case into a subsequent case requiring a determination on that same issue. Collateral estoppel and double jeopardy can overlap, and do so here.

We conclude that the collateral-estoppel strand of Double Jeopardy Clause jurisprudence prevents the prosecution from re-charging the defendant with felony murder. Because the defendant's acquittal of the only supporting felony triggers collateral estoppel, the Double Jeopardy Clause precludes a second felony-murder prosecution of the defendant.

## I. FACTS AND PROCEDURAL BACKGROUND

In December 2009, the defendant was convicted by a jury of first-degree felony murder, MCL 750.316(1)(b), second-degree murder, MCL 750.317, assault with intent to commit great bodily harm less than murder, MCL 750.84, carrying a firearm during the commission of a felony, MCL 750.227b, and two counts of unlawful imprisonment, MCL 750.349b. The jury acquitted the defendant of first-degree premeditated murder, MCL 750.316(1)(a), and—importantly—first-degree home invasion, MCL 750.110a(2). Because first-degree home invasion was the only *felony* that the defendant was charged with that could have supported the conviction for first-degree *felony murder*, see MCL 750.316(1)(b), the initial jury verdict was, plainly, inconsistent.

The Court of Appeals reversed the defendant's convictions, holding that the trial court had committed error by denying the defendant's constitutional right to represent himself. *People v Wilson*, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2011 (Docket No. 296693). The Court of Appeals remanded this case to

2

the trial court for a new trial, and this Court denied the prosecution's application for leave to appeal. *People v Wilson*, 490 Mich 861 (2011).

On April 6, 2012, the prosecution filed an amended information setting forth the charges on retrial. The defendant was re-charged with each of the charges of which he was initially convicted. The defendant moved to dismiss the first-degree felony-murder charge, arguing that the Double Jeopardy Clause prevented a second prosecution on that charge because he stood acquitted of the only predicate felony, which is one of the elements of felony murder. On July 6, 2012, the trial court granted the defendant's motion to dismiss, agreeing that a second jury could not reconsider the home-invasion element of felony murder given the preclusive effect of the defendant's acquittal of home invasion.

The Court of Appeals granted the prosecution's interlocutory application for leave to appeal and reversed the trial court's order in an unpublished opinion per curiam. The Court of Appeals held that because the jury's verdict was inconsistent, that inconsistency negated the application of the collateral-estoppel doctrine in the second prosecution, citing *United States v Powell*, 469 US 57, 68; 105 S Ct 471; 83 L Ed 2d 461 (1984), for the proposition that the jury has the prerogative to return inconsistent verdicts. On May 24, 2013, this Court granted leave to appeal. *People v Wilson*, 494 Mich 853 (2013).

## II. LEGAL BACKGROUND

### A. DOUBLE JEOPARDY

The Double Jeopardy Clause of the United States Constitution protects defendants against the threat of successive prosecutions for the same offense and multiple

punishments for the same offense. US Const, Am V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . .").

A double-jeopardy challenge presents a question of law that this Court reviews de novo. *People v Herron*, 464 Mich 593, 599; 628 NW 2d 528 (2001).

## B. COLLATERAL ESTOPPEL

Collateral estoppel, also known as issue preclusion, is a common-law doctrine that gives finality to litigants. In essence, collateral estoppel requires that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v McCurry*, 449 US 90, 94; 101 S Ct 411; 66 L Ed 2d 308 (1980). See also *Montana v United States*, 440 US 147, 153; 99 S Ct 970; 59 L Ed 2d 210 (1979), citing *Southern Pacific R Co v United States*, 168 US 1, 48-49; 18 S Ct 18; 42 L Ed 355 (1897) ("A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .' "). The doctrine of collateral estoppel serves many purposes: it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen*, 449 US at 94.

In 1970, the United States Supreme Court explicitly recognized the conceptual overlap between double jeopardy and collateral estoppel, and officially linked them by constitutionalizing collateral estoppel within the Fifth Amendment's guarantee against

4

double jeopardy. *Ashe v Swenson,* 397 US 436, 445; 90 S Ct 1189; 25 L Ed 2d 469 (1970). The *Ashe* Court noted, however, that "collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer* [242 US 85; 37 S Ct 68; 61 L Ed 161 (1916)]." *Ashe,* 397 US at 443.[1]

The defendant in *Ashe* had been tried and acquitted of the robbery of one member of a poker game. Following the defendant's acquittal, the prosecution charged him with the robbery of a different poker player, and he was convicted. The Court explained that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* The question is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444. Because the "single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers," this second prosecution, which necessarily would have required the relitigation of this already determined issue, violated the Fifth Amendment. *Id.* at 445.

The Supreme Court applied collateral estoppel in the context of a double-jeopardy analysis again in *Yeager v United States,* 557 US 110; 129 S Ct 2360; 174 L Ed 2d 78 (2009). In *Yeager,* a jury acquitted the defendant of certain fraud charges, but could not reach a verdict on the insider-trading charges. The acquittals and hung counts were

---

[1] The defendant has not argued that the "same offense" rationale of double jeopardy is implicated. Thus we address only whether the collateral-estoppel strand of double jeopardy is implicated.

5

logically inconsistent with one another; in order to acquit the defendant of the fraud counts, the jury would have had to decide that the defendant had not possessed insider information, which should have led a rational jury to also acquit him of the insider-trading charges. The Court held that this apparent inconsistency did not change the preclusive force of the acquittal in a second prosecution under the Double Jeopardy Clause. "A hung count is not a relevant part of the record of the prior proceeding," and therefore has no place in the collateral-estoppel analysis. *Yeager*, 557 US at 121. In other words, the Court held that the hung counts were not legally meaningful and could not defeat the preclusive force of the acquittals.

## C. INCONSISTENT VERDICTS

As with collateral estoppel, the Supreme Court authority concerning the validity of inconsistent jury verdicts is well developed. In *Dunn v United States*, 284 US 390, 393-394; 52 S Ct 189; 76 L Ed 356 (1932), the Court held that inconsistent verdicts within a single jury trial are permissible, explaining "[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury . . . . But verdicts cannot be upset by speculation or inquiry into such matters." This Court has similarly held that inconsistent verdicts do not require reversal, because "[j]uries are not held to any rules of logic nor are they required to explain their decisions." *People v Vaughn*, 409 Mich 463, 466; 295 NW 2d 354 (1980).

The Supreme Court reaffirmed this principle in *Powell*, 469 US 57, rejecting the defendant's argument that the principles of collateral estoppel should require a different result. The defendant, who had been acquitted of the predicate felony but convicted of

6

the compound felony, argued that principles of collateral estoppel should be incorporated into the inconsistent verdict case and should require the reversal of the compound-felony conviction. *Id.* at 64 ("[I]ndeed, [the defendant] urges that principles of res judicata or *collateral estoppel should apply to verdicts rendered by a single jury*, to preclude acceptance of a guilty verdict on a [compound felony] where the jury acquits the defendant of the predicate felony.") (emphasis added). The Court disagreed with the defendant, noting that in the case of an inconsistent verdict, "it is unclear whose ox has been gored." *Id.* at 65. The defendant's conviction stood.

## III. APPLICATION

Our decision in this case hinges on whether, as the Court of Appeals held, the inconsistent-verdict reasoning of *Dunn* and *Powell* is relevant to the defendant's collateral-estoppel claim such that the rule from *Ashe* and *Yeager* does not apply. As an initial matter, we note that the inconsistent-verdict cases, *Dunn* and *Powell*, feature only direct appeals from a single jury verdict. By definition, collateral estoppel and double jeopardy are simply not applicable to a single verdict, even when that verdict is inconsistent. *Ashe* and *Yeager*, in contrast, each concerned the propriety of a second prosecution. The very application of the Double Jeopardy Clause necessarily requires more than one trial: Again, double jeopardy is irrelevant within the scope of a single prosecution and the resulting verdict because the defendant is in continuing jeopardy in any single trial. *Yeager*, 557 US at 117; *id.* at 130 (Scalia, J., dissenting) ("As a conceptual matter, it makes no sense to say that events occurring within a single prosecution can cause an accused to be twice put in jeopardy.") (citation and quotation

7

marks omitted).[2]  See also *Boston Muni Court Justices v Lydon*, 466 US 294, 308-309; 104 S Ct 1805; 80 L Ed 2d 311 (1984).[3]  Relatedly, if a defendant's conviction is reversed on direct appeal, a second prosecution does not implicate double-jeopardy concerns, because in that instance too the defendant is still in continuing jeopardy.  In a second prosecution following an appellate reversal, only "[a]cquittals, [not] convictions, terminate the initial jeopardy." *Lydon*, 466 US at 308.

Because *Powell* involved an appeal from a single trial, no double-jeopardy concerns were present, despite the defendant's attempt to make them relevant.  *Powell*, 469 US at 64.  While the verdict in *Powell* was inconsistent, the doctrine of collateral estoppel was not relevant.  *Dunn*, 284 US at 393.  Collateral estoppel, like double jeopardy more broadly, necessarily presupposes some passage of time between a final adjudication of an issue at one time, and the threat of a subsequent adjudication of the same issue.  In this case, the Court of Appeals apparently extrapolated from *Powell* the

---

[2] The dissent is correct that Justice Scalia relied on *Dunn* and *Powell* "to support his position that the inconsistent nature of the verdict in *Yeager* nullified *Yeager*'s reliance on the valid and final acquittal for collateral estoppel purposes."  Justice Scalia's view, however reasonable, is not the rule of law we must apply here as he, of course, dissented in *Yeager*.  We cite Justice Scalia's dissent for the unremarkable proposition that double-jeopardy concerns are only implicated when there is a second trial.

[3] There is one exception: in two cases the Supreme Court has applied the Double Jeopardy Clause to midtrial acquittals.  In both instances, the Court held that the midtrial acquittals were final and that the Double Jeopardy Clause barred their reconsideration. *Smith v Massachusetts*, 543 US 462, 473; 125 S Ct 1129; 160 L Ed 2d 914 (2005); *Smalis v Pennsylvania*, 476 US 140, 145-146; 106 S Ct 1745; 90 L Ed 2d 116 (1986).  These exceptions are, of course, inapplicable to this case in which there was no mid-trial acquittal.  Indeed, *Smith* and *Smalis* support the more important proposition for the defendant, that acquittals are final and unassailable in the application of the Double Jeopardy Clause.

8

proposition that application of collateral estoppel is only appropriate when there was a prior *consistent* verdict. Since *Powell* did not concern a second prosecution, and therefore no double-jeopardy concerns were implicated, the inconsistent-verdict analysis that *Powell* provides does not address the important issue presented in the case at hand.[4] The Court of Appeals' reliance on *Powell* to authorize re-charging the defendant with felony murder was misplaced, given that his objection sounded in double jeopardy, not the inconsistency of his initial verdict.

It is instead the *Yeager* holding that demonstrates why the prosecution cannot re-try the defendant for felony murder. *Yeager* embodies the unremarkable but fundamental proposition that if an issue has been finally resolved at one moment in time, the same issue cannot be resolved differently at a subsequent time. The defendant in this case finds himself facing exactly this problem; he stands acquitted of first-degree home invasion, the only predicate felony that could support a conviction for felony murder and which is thus an element of felony murder, a charge he is facing again. Convicting him of felony murder would, therefore, require the same factual basis as home invasion, for which he was previously and finally acquitted. This is what *Yeager* prevents.

---

[4] We agree with the dissent that the Supreme Court squarely and thoroughly addressed whether collateral-estoppel principles are relevant to inconsistent verdicts in *Powell*, but we are not similarly troubled by why the Court did so given that double-jeopardy concerns are simply not applicable within the scope of a single trial. The defendant made the argument that collateral estoppel should bar his inconsistent verdict and managed to convince the United States Court of Appeals for the Ninth Circuit of his view. The Supreme Court disagreed, and naturally explained its reasoning.

The importance of an acquittal in the context of the Double Jeopardy Clause is well established. It is of course long settled that, given his acquittal of home invasion, the prosecution is barred from re-charging the defendant again with home invasion, even though the legal error at trial required vacating his convictions. That error does not permit him to be retried for home invasion, even had the error contributed to his acquittal of that charge just as it contributed to his convictions (which does not seem to be the case here). An acquittal is final and unassailable; double jeopardy is a one-way ratchet. *Ball v United States*, 163 US 662, 671; 16 S Ct 1192; 41 L Ed 300 (1896) ("The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution. However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offense."). See also *Fong Foo v United States*, 369 US 141, 143; 82 S Ct 671; 7 L Ed 2d 629 (1962) (finding an acquittal to be an absolute bar to a subsequent prosecution even when the acquittal was "based upon an egregiously erroneous foundation"); *United States v DiFrancesco*, 449 US 117, 129; 101 S Ct 426; 66 L Ed 2d 328 (1980) ("The law attaches particular significance to an acquittal."); *Yeager*, 557 US at 119 ("[T]he jury's acquittals unquestionably terminated petitioner's jeopardy with respect to the issues finally decided in those counts.").

The inconsistency in the defendant's initial jury verdict here—though distracting and confounding as illogical verdicts are—does not alter this fundamental principle, given the subsequent appellate reversal of his convictions. Notwithstanding the dissent's lengthy protest to the contrary, the initial guilty verdicts are no more. Although the defendant was convicted of felony murder, that conviction has since been vacated

10

because it was constitutionally infirm; the defendant no longer stands convicted, not of anything, not at all. The only final adjudication the defendant carries into his second trial, then, is his acquittal of first-degree home invasion, which must be given effect pursuant to the collateral-estoppel prong of double jeopardy in the retrial. *Lydon*, 466 US at 308.

*Yeager* thus controls: The defendant's reversed felony-murder conviction here must be treated exactly as the hung counts were treated in *Yeager*. Neither a hung count nor a count that is reversed on appeal can defeat the preclusive effect of an acquittal. Like a hung count, a reversed count is not a final adjudication; by operation of law the finality of the conviction has been undone. By holding that a legal error required the reversal of a defendant's convictions, we have legally proclaimed that those convictions are no longer adjudications at all.[5] Indeed, the legal meaning of a reversed conviction is settled. As the Supreme Court has said:

> [R]eversal for trial error, as distinguished from evidentiary sufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect . . . . [*Burks v United States*, 437 US 1, 15; 98 S Ct 2141; 57 L Ed 2d 1 (1978) (emphasis added).][6]

---

[5] We know of no other situation in a criminal prosecution in which we permit a defendant's vacated conviction to be used to the defendant's detriment and see no reason why we should create an exception. See, e.g., *People v Holt*, 54 Mich App 60, 63-64; 220 NW2d 205 (1974) (stating that a vacated conviction cannot be used for sentencing purposes); *People v Crable*, 33 Mich App 254, 257; 189 NW2d 740 (1971) (stating that a vacated conviction cannot be used to impeach a defendant).

[6] We disagree with the dissent's understanding of *Burks*: *Burks* stands for the proposition that a reversed conviction is legally meaningless, which is what matters for our purposes.

11

The same is not true of the defendant's acquittal. An acquittal is never recast or disturbed, no matter what error might have produced it. *Ball*, 163 US at 671. The defendant begins his second trial with only one perfected adjudication—his acquittal of first-degree home invasion. Just as in *Yeager*, the acquittal must be given preclusive effect.[7] Our disagreement with the dissent boils down to exactly this point: The dissent believes that a legally vacated conviction is still meaningful for the purposes of

Of course it is always the case that "society maintains a valid concern for insuring that the guilty are punished," *Burks*, 437 US at 15, and that concern animates the authority that permits the prosecution to retry the defendant for all of the offenses that were vacated but for which there is no double-jeopardy constraint. In this case it is only the felony-murder charge that is barred on retrial, not second-degree murder, assault with intent to commit great bodily harm less than murder, carrying a firearm during the commission of a felony, and two counts of unlawful imprisonment. The defendant remains in continuing jeopardy on these vacated convictions, and would so remain with respect to his felony-murder conviction but for the preclusive force of his home-invasion acquittal.

[7] The *Yeager* Court's discussion of the rationality of verdicts in determining whether collateral estoppel applies is not particularly relevant here, where there is only one verdict to consider. It is noteworthy, however, that the jury verdict in *Yeager* was not obviously rational or consistent. The Supreme Court instead rationalized the verdict by treating the hung counts, which were inconsistent with the acquittals, as legal "nonevents," given that they were not final adjudications. The Court of Appeals' reversal of the defendant's felony-murder conviction in this case renders that conviction a "nonevent" as well. A reversed conviction is of even less legal consequence than a hung count. Although it is understandable that the Supreme Court would need to dedicate some time to analyzing the proper weight to give a hung count—an undisturbed jury "determination" of a sort—at the time of the defendant's second trial when analyzing how to give meaning to a jury's findings, it is much easier to determine what weight should be given a reversed conviction—none. *Burks*, 437 US at 15. A reversed conviction, like a hung count, cannot be considered a relevant part of the record of the prior proceeding. See *Yeager*, 557 US at 121.

collateral-estoppel analysis.[8]  We see no available way to bring that legally vacated conviction back to life.[9]

The prosecution is free to retry the defendant on all the other vacated convictions. But the Double Jeopardy Clause collaterally estops a new prosecution for felony murder.

## IV. CONCLUSION

We conclude that the Double Jeopardy Clause prevents the prosecution from re-charging the defendant with felony murder when the only verdict that remains is the

---

[8] The *Yeager* and *Ashe* Courts were not considering *vacated* convictions in their collateral-estoppel analyses, of course, but undisturbed jury findings.  Those undisturbed findings, therefore, were still available for discernment.  In cases, like *Yeager* and *Ashe*, in which there is an undisturbed jury verdict to examine at the time of retrial, a reviewing court must delve into the facts and circumstances of the jury's findings in order to understand the verdict's specific meaning.  When, as here, there simply is no conviction to be so analyzed, as it was previously vacated by the Court of Appeals, we are bound by that legal finding.  We cannot undo the reversal and delve back into a jury finding that has been held to be invalid.  The dissent jumps over this critical step.  Because a reversal renders a conviction meaningless, there is nothing left for a reviewing court to examine or decipher.

[9] Neither *State v Kelly*, 201 NJ 471; 992 A2d 776 (2010), nor *Evans v United States*, 987 A2d 1138 (DC, 2010), are helpful to our analysis.  Although the dissent is correct that these cases involve similar facts, neither engages the argument that a vacated conviction functions as a proclamation that a jury determination is a legal nullity.  It is difficult to understand whether *United States v Bruno*, 531 Fed Appx 47, 49 (CA 2 2013), has any persuasive force, given that it is an unpublished order devoid of any specific factual background as to the nature of the convicted and acquitted counts.  But from the cursory facts that are presented, it does not appear that the charges decided differently involved the same conduct or subject matter, which would alone foreclose a collateral-estoppel claim.  Of course we are not bound by any opinion from a sister jurisdiction reaching the opposite conclusion that we reach here, especially when none addresses the issue we find decisive.

13

defendant's acquittal of the predicate felony.  Therefore, we reverse the judgment of the

Court of Appeals and remand this case to the trial court for further proceedings.

Bridget M. McCormack
Robert P. Young, Jr.
Michael F. Cavanagh
Mary Beth Kelly

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                            No. 146480

DWAYNE WILSON,

       Defendant-Appellant.

_____

MARKMAN, J. (*dissenting*).

Defendant, armed with a handgun, entered his ex-girlfriend's apartment while she was out with another man, Kenyetta Williams. Defendant lay in wait for his ex-girlfriend to return, and when she did so with Williams, he fired his handgun three times, killing Williams. Defendant's charges included first-degree premeditated murder, first-degree felony murder predicated on first-degree home invasion, second-degree murder, and first-degree home invasion.

Defendant sought to represent himself at his first trial, but the trial court denied his motion to do so. Defendant's first trial resulted in the jury's convicting him of first-degree felony murder and second-degree murder, but acquitting him of first-degree premeditated murder and first-degree home invasion. Because the offense of first-degree felony murder was predicated on the first-degree home invasion charge, and the jury could only rationally convict defendant of first-degree felony murder if it also convicted defendant of first-degree home invasion, the verdict rendered by the jury was inconsistent and irrational. Defendant appealed his convictions for first-degree felony murder and

second-degree murder, contending that he was denied his right to represent himself as guaranteed by the Sixth Amendment. The Court of Appeals reversed defendant's convictions and remanded for a new trial on the first-degree felony murder charge and the second-degree murder charge.[1] *People v Wilson*, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2011 (Docket No. 296693).

Back before the trial court, defendant moved to dismiss the first-degree felony murder charge on the theory that retrial was barred by the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution because defendant's first jury had acquitted him of the felony of first-degree home invasion on which the first-degree felony murder charge was predicated. The trial court granted defendant's motion, but the prosecutor filed an interlocutory appeal and the Court of Appeals reversed. *People v Wilson*, unpublished opinion per curiam of the Court of Appeals, issued November 15, 2012 (Docket No. 311253). This Court then granted leave to appeal on the question whether the protection against double jeopardy found in the Fifth Amendment prevents retrial of a compound offense when the first trial resulted in the jury's convicting defendant of such offense but acquitting defendant of the predicate offense and the conviction on the compound offense was subsequently overturned.[2] *People v Wilson*,

---

[1] As defendant's first jury acquitted him of first-degree premeditated murder and first-degree home invasion, retrial on those offenses was barred by the Double Jeopardy Clause of the Fifth Amendment. Retrial on those charges is not at issue in this appeal, and the jury's verdicts of acquittal of first-degree premeditated murder and first-degree home invasion have been given full effect.

[2] A "compound offense" is one that has as an element the commission of some other enumerated offense. *People v Robideau*, 419 Mich 458, 508 n 7; 355 NW2d 592 (1984) (CAVANAGH, J., dissenting). The enumerated offense is the "predicate offense."

494 Mich 853 (2013). Defendant asks this Court to answer that question in the affirmative, on the basis of the collateral-estoppel strand of the Double Jeopardy Clause. See *Ashe v Swenson*, 397 US 436, 445-446; 90 S Ct 1189; 25 L Ed 2d 469 (1970).[3]

## I. COLLATERAL ESTOPPEL

## A. PRINCIPLES

The seminal case involving collateral estoppel and the protection against double jeopardy is *Ashe*. In *Ashe*, the prosecutor believed that the defendant and several other masked persons broke into a house and participated in the robbery of six individuals. *Id*. at 437. The prosecutor put the defendant on trial for the robbery of one of the six individuals. *Id*. at 438. The sole defense raised was that the defendant was not one of the masked persons who had participated in the robbery, *id*. at 438-439, and the jury acquitted him. *Id*. at 439. Despite the acquittal, the prosecutor brought a new charge against the defendant for the robbery of another of the individuals who had been robbed. *Id*. After the defendant's second trial resulted in a conviction, he contended that his first jury had determined that he was not a participant in the robbery and to convict him of the robbery of the second individual would be to derogate the finding made by the first jury about whether the defendant participated in the robbery. *Id*. at 440.

Before *Ashe*, collateral estoppel had not been viewed as a basis for raising a double jeopardy claim. *Id*. at 440-441, citing *Hoag v New Jersey*, 356 US 484; 78 S Ct

---

[3] Defendant specifically eschews any reliance on the argument that first-degree felony murder and the predicate offense of first-degree home invasion are the "same offense" for double jeopardy purposes. See *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

3

829; 2 L Ed 2d 913 (1958). *Ashe*, however, concluded that the doctrine of collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy" and prohibits a retrial when "an issue of ultimate fact has once been determined by a valid and final judgment, [such that the] issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 US at 443, 445-446.

When the doctrine of collateral estoppel has been invoked by defendant, "[t]he burden is 'on [him] to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.' " *Schiro v Farley*, 510 US 222, 233; 114 S Ct 783; 127 L Ed 2d 47 (1994), quoting *Dowling v United States*, 493 US 342, 350; 110 S Ct 668; 107 L Ed 2d 708 (1990).[4] In assessing a defendant's reliance on a verdict of acquittal and the doctrine of collateral estoppel, a court must

> "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a *rational jury* could have grounded its verdict upon an issue *other* than that which the defendant seeks to foreclose from consideration." [*Ashe*, 397 US at 444, quoting Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv L Rev 1, 38-39 (1960) (emphasis added).]

---

[4] The majority opinion entirely overlooks that *defendant* bears the burden of demonstrating what issues of ultimate fact were decided during the first trial. This causes it to embark upon its analysis from the wrong starting point-- whether defendant is being denied his double jeopardy rights rather than whether defendant has made out his collateral-estoppel defense-- leading it to the mistaken conclusion that retrying defendant on the first-degree felony murder charge would amount to using his subsequently reversed conviction against him. When the burden is rightly placed on defendant to demonstrate that the first jury resolved an "issue of ultimate fact" in his favor, the jury's verdict convicting defendant of first-degree felony murder cannot properly be said to have been "used to [his] detriment." After all, it is *defendant* in these circumstances who has come forward and who seeks to rely on the verdict containing the first-degree felony murder conviction.

4

Put another way, a defendant will only prevail in sustaining his burden when the court, " 'with an eye to *all the circumstances* of the proceedings' " is convinced that the first jury, in acquitting the defendant, resolved the issue of ultimate fact in defendant's favor. *Ashe*, 397 US at 444, quoting *Sealfon v United States*, 332 US 575, 579; 68 S Ct 237; 92 L Ed 180 (1948). In this sense, *Ashe*, by inquiring what a "rational jury" determined, premised defendant's invocation of collateral estoppel on the existence of a rational jury whose verdict has a singular and unmistakable explanation favoring defendant on the issue of ultimate fact.

Conversely, if "[t]here are *any number* of possible explanations for the jury's acquittal verdict at [defendant's] first trial," he will be unable to satisfy his burden and the doctrine of collateral estoppel will not preclude relitigation of the issue from the first verdict upon which defendant seeks to rely. *Dowling*, 493 US at 352 (emphasis added.). In other words, "unless the record establishes that the issue was *actually* and *necessarily* decided in the defendant's favor," the issue may be relitigated without offending the Fifth Amendment guarantee against double jeopardy. *Schiro*, 510 US at 236 (emphasis added). To assess whether an issue of ultimate fact was "actually and necessarily decided in the defendant's favor," a court must "scrutinize a jury's decisions." *Yeager v United States*, 557 US 110, 123; 129 S Ct 2360; 174 L Ed 2d 78 (2009). Relevant to this case, for defendant to prevail on his collateral-estoppel argument, he must demonstrate that the first jury "actually and necessarily" determined that he had not engaged in conduct satisfying the elements of the predicate offense of first-degree home invasion.

5

The United States Supreme Court has had multiple opportunities to discuss whether a defendant can satisfy his burden of demonstrating that an issue of ultimate fact was actually and necessarily determined by a jury that rendered a "truly inconsistent" verdict.  See *United States v Powell*, 469 US 57, 64; 105 S Ct 471; 83 L Ed 2d 461 (1984); *Dunn v United States*, 284 US 390; 52 S Ct 189; 76 L Ed 356 (1932).  As background, *Dunn* involved a defendant charged with three counts: (1) "maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor;" (2) "unlawful possession of intoxicating liquor;" and (3) "unlawful sale of such liquor." *Dunn*, 284 US at 391.  The jury convicted the defendant of the first count but acquitted him of the second and third counts.  *Id*. at 391-392.  The defendant argued that when the evidence supporting each of the three counts was essentially identical, his conviction on the first count should be discharged on the basis of his acquittals on the second and third counts.  *Dunn* held that "[c]onsistency in the verdict is not necessary" for the verdict to be valid.  *Id*. at 393.  In doing so, it stated that "an acquittal on one [of the counts] could not be pleaded as res judicata of the other." *Id*.[5]

*Powell* involved an even more logically inconsistent verdict in which the jury convicted the defendant of several compound offenses while acquitting her of several predicate offenses required to be proved to sustain the convictions for the compound

---

[5] This Court similarly has upheld the validity of inconsistent verdicts and rejected a defendant's attempt to employ a verdict's inconsistent character to undermine charges for which he had been *convicted* by way of charges for which he had been *acquitted*.  *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980).

offenses. *Powell*, 469 US at 60-61.[6]  Relying on *Ashe*, Powell argued that the jury's verdict of acquittal on the predicate offense collaterally estopped the jury from convicting her of the compound offense. *Id*. at 64.  In assessing the jury verdict, the United States Supreme Court noted that when a jury has rendered an inconsistent verdict, "the verdict[] cannot rationally be reconciled." *Id*. at 69.  This is so because when a jury renders an inconsistent verdict, the jury has acted in "error" or with "irrationality" in that it has not accurately or faithfully followed the jury instructions in applying the law to its factual conclusions.  See *id*. at 65, 67 ("Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred . . . .")  That the jury verdict is the product of "error" or "irrationality" has fatal consequences for a defendant's ability to rely on the verdict to show that an issue of ultimate fact has been resolved in the defendant's favor:

> The problem is that the same jury reached inconsistent results; once that is established, principles of collateral estoppel—which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful. [*Id*. at 68]

---

[6] Notably, the inconsistency in the verdict in the instant case is the same as the inconsistency in the verdict in *Powell*.  Wilson was convicted of first-degree felony murder but acquitted of home invasion (the predicate-felony), and Powell was convicted of the "compound offenses" of using the telephone in committing and in causing and facilitating certain felonies-- conspiracy to possess with intent to distribute and possession with intent to distribute cocaine-- but acquitted of conspiracy to knowingly and intentionally possess with intent to distribute cocaine and possession of cocaine with intent to distribute (the predicate felonies).

7

Accordingly, the Court rejected Powell's double jeopardy argument premised on collateral estoppel, upholding her conviction for the compound offense despite the jury's acquittal on the predicate offense.

The reason that "principles of collateral estoppel . . . are no longer useful" when there is an inconsistency in the verdict relied on by the defendant for an issue of ultimate fact is that it is simply not possible to apprehend whether the jury resolved the issue of ultimate fact in the defendant's favor in accordance with the part of the verdict acquitting the defendant, or in the prosecutor's favor in accordance with the part of the verdict convicting the defendant. Pertinent to the verdict in the instant case, it is simply not possible to apprehend whether the jury resolved the issue of ultimate fact in defendant's favor in accordance with the part of the verdict acquitting him of first-degree home invasion, or in the prosecutor's favor in accordance with the part of the verdict convicting him of first-degree felony murder, a charge necessarily encompassing a finding that he had "engaged in conduct satisfying the elements of the predicate offense of first-degree home invasion."

It is well understood that there are multiple potential explanations for why juries sometimes render inconsistent verdicts. At least some (if not most) of these explanations fail to support the conclusion that the jury "actually and necessarily" decided an issue of ultimate fact in the defendant's favor. Perhaps, the most commonplace explanation for why a jury might do this is that the jury simply sought to grant the defendant some degree of mercy or lenity.[7] Speaking to the jury's mindset in this regard, *Dunn* stated:

---

[7] As the majority opinion appears to believe that the particular explanation for an inconsistent verdict is irrelevant once the convictions have been reversed, it never affords

8

"The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." [*Dunn*, 284 US at 393, quoting *Steckler v United States*, 7 F2d 59, 60 (CA 2, 1925)][8]

Obviously, when mercy or lenity are the precipitating causes of a jury's inconsistent verdict, it becomes impossible to argue that it has "actually and necessarily decided the issue of ultimate fact in defendant's favor." Indeed, when an inconsistent verdict is the product of mercy or lenity by the jury, the exact opposite conclusion must result, to wit, that the jury "actually and necessarily decided the issue of ultimate fact *against* defendant," for had it not, there would be no need for mercy or lenity.

---

consideration to what might have caused the jury here to render an inconsistent verdict. Under this analysis, even if it were *known* with certainty that the jury had acquitted defendant of the predicate offense out of mercy or lenity, the majority opinion would still reach the same conclusion, barring retrial of the first-degree felony murder charge based on the acquittal of the first-degree home invasion charge.

[8] This Court has similarly concluded that mercy and lenity are the most likely explanations for why a jury might render an inconsistent verdict:

Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. . . . But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility. [*People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980) (citations omitted).]

9

Other typical explanations for why a jury might have rendered an inconsistent verdict are equally of little avail in a defendant's attempt to demonstrate that the jury "actually and necessarily decided an issue of ultimate fact in defendant's favor." For instance, in *Powell* it was suggested that in addition to lenity, "mistake" or "compromise" might well explain why a jury has rendered an inconsistent verdict. *Powell*, 469 US at 65. However, when an inconsistent verdict is the product of a mistake, it is impossible to know whether a jury mistakenly *convicted*, or mistakenly *acquitted*, defendant because it is "unclear whose ox has been gored"-- the prosecutor's or the defendant's-- by the mistake. *Id*. And when an inconsistent verdict is the product of compromise, a jury simply cannot be said even to have decided any issue of ultimate fact.

In the end, the mere fact alone that there *are* myriad explanations for why a jury has rendered an inconsistent verdict only underscores that there is no way of determining whether such a jury has "actually and necessarily decided the ultimate issue of fact upon which defendant seeks to rely." It is for this reason that it is usually as possible that a jury determined the issue of ultimate fact *against* defendant as that the jury determined the issue of ultimate fact in *favor* of defendant:

> The rule that the defendant may not upset [an inconsistent] verdict embodies a prudent acknowledgment of a number of factors. First, . . . inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then . . . arrived at an inconsistent conclusion on the lesser offense. [*Id*.]

* * *

Second, respondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. . . . [Defendant's] argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily—and erroneously—argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. [*Id*. at 68.]

Just as a prosecutor is unable to prevail on a collateral-estoppel argument by relying on the convicted charges to seek retrial on the acquitted charges, a defendant in support of a claim of collateral estoppel is unable to rely on the acquitted charges to avoid retrial on the convicted charges. *Id*. When the burden of proof is on the defendant to sustain the claim of collateral estoppel, the inconsistency in the verdict, which prevents a reviewing court from knowing with any certainty what the defendant's jury actually and necessarily determined, will foreclose the defendant's ability to prevail on the claim.

The verdict here on which defendant relies for his collateral-estoppel defense was genuinely inconsistent. Because the jury convicted defendant of first-degree felony murder predicated on the first-degree home invasion charge but acquitted him of first-degree home invasion, it is not possible to know what determination it "actually and necessarily" made regarding whether defendant engaged in conduct satisfying the elements of first-degree home invasion. The appellate reversal of defendant's conviction for first-degree felony murder because he was not permitted to represent himself during his first trial neither alters what factual findings the jury actually and necessarily made nor enables any rationality to be ascribed to the jury's verdict.

## II. RESPONSE TO MAJORITY OPINION

The majority opinion offers three arguments for why *Powell* and *Dunn* are not "relevant" to the instant case: (1) *Powell*'s and *Dunn*'s discussions of the doctrine of collateral estoppel took place within the context of a single trial and should not be applied when, as here, a second trial is involved, (2) *Powell* and *Dunn* are in conflict with *Ashe* and *Yeager*, which should control this case, and (3) reliance on *Powell* and *Dunn* to defeat defendant's collateral-estoppel defense would alter the "legal meaning" given to defendant's reversed conviction and in so doing conflict with *Burks v United States*, 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978).

## A. MULTIPLE TRIALS

The majority opinion distinguishes *Powell* and *Dunn* on the grounds that they "feature only direct appeals from a single jury verdict" and that principles of "collateral estoppel and double jeopardy are simply not applicable to a single verdict." There is no dispute that principles of collateral estoppel and double jeopardy have no place within the context of a single trial, but the majority opinion fails to ever consider why this is so. In overlooking this basic question, the majority opinion erroneously dismisses *Powell*'s and *Dunn*'s counsel regarding the interplay between inconsistent verdicts and collateral estoppel.

The only time a defendant might, even theoretically, advance a claim of collateral estoppel within the context of a single trial is when a jury has rendered an inconsistent verdict. This is because, in order for a defendant to advance a claim of collateral estoppel, he must first identify an issue of ultimate fact that the jury has resolved in his favor. The only time he can identify such an issue is when the jury has (a) acquitted the

12

defendant or (b) acquitted the defendant of a charge that shares a disputed issue of ultimate fact with another charge of which the jury convicted the defendant, thus producing an inconsistent verdict. No explanation is required for why the defendant would lack cause, or justiciable interest, to appeal a full acquittal. Therefore, the only time a defendant might attempt to raise a collateral-estoppel argument on direct appeal in the single trial context is when the jury has rendered an inconsistent verdict. Accordingly, the *reason* that principles of collateral estoppel have no place within the context of a single trial is because of the holdings from *Powell* and *Dunn* that principles of collateral estoppel are "no longer useful" when the jury has rendered an inconsistent verdict, the one and only scenario in which a defendant might even theoretically attempt to raise a collateral-estoppel defense within the context of a single trial.

If *Powell* and *Dunn* stand only for what the majority opinion views as the pedestrian proposition that collateral estoppel and double jeopardy have no relevance in the context of a single trial, then what explains the United States Supreme Court's decision to discuss at length in those cases principles of collateral estoppel and inconsistent verdicts and ground its holdings on those very issues? If the majority opinion's position regarding *Powell*'s significance is correct, the unanimous Court in *Powell* could have easily authored a one-page opinion stating that (a) *Dunn* allowed for inconsistent verdicts and (b) principles of double jeopardy never apply within the context of a single trial because the defendant has only been tried once. Instead, however, the Court clearly, and without any qualification, announced that when the jury renders a truly inconsistent verdict, principles of collateral estoppel are "no longer useful." *Powell*, 469

13

US at 68.[9] It is only as a result of *this* conclusion that *Powell* effectively determined that principles of collateral estoppel and double jeopardy have no place within a single trial. As such, there is no obvious reason that *Powell*'s holding should be limited to cases involving a single trial because to do so would be to divorce *Powell*'s reasoning from the effect of *Powell*'s rule.

The majority opinion's narrow reading of *Powell* is all the more perplexing in light of what Supreme Court caselaw after *Powell* has understood *Powell* to represent. See *part* II(B) of this opinion. In this respect, *Powell*'s rule is not in conflict with other cases examining principles of collateral estoppel, but is in full concert with the manner in which other cases understand how and when principles of collateral estoppel prevent the retrial of a defendant.

## B. *POWELL* CONSISTENT WITH *YEAGER* AND *ASHE*

*Yeager* is the most recent United States Supreme Court case to apply collateral-estoppel principles within the context of the Double Jeopardy Clause. The defendant in *Yeager* was charged with various counts of fraud and insider trading predicated on the fraud. *Yeager*, 557 US at 113. His first trial resulted in the jury's acquitting him of the predicate fraud offenses but not reaching a verdict on the compound offense of insider trading. *Id.* at 115. When the government sought to retry the defendant on the insider-trading charge, he sought to dismiss the prosecution on double jeopardy grounds. *Id.* He argued that principles of collateral estoppel barred retrial of the compound offenses on

---

[9] Notably, the majority opinion fails to give any weight to *Powell*'s unequivocal statement on this point.

which the jury had been hung given that the jury had acquitted defendant of the predicate offenses. *Id*.

At issue was whether a verdict encompassing acquittals and hung counts is the type of verdict from which a court can conclude that the jury "actually and necessarily determined an issue of ultimate fact" such that principles of collateral estoppel would preclude retrial of the hung counts, *id*. at 118-119, or whether such a verdict instead implicates *Powell*'s holding that principles of collateral estoppel do not apply within the context of an inconsistent verdict, *id*. at 124-125. *Yeager* held that a verdict consisting of acquittals and *hung counts* (as opposed to a verdict consisting of acquittals and *convictions*) was not a truly inconsistent verdict, but was only "seemingly inconsistent" and not indicative of a jury that had acted irrationally, such that principles of collateral estoppel were applicable. *Id*. at 122-123. Nonetheless, *Yeager* once again emphasized that principles of collateral estoppel are only applicable when the jury's verdict is consistent and rational, and premised its application of collateral estoppel on being able to ascribe sufficient consistency and rationality to the verdict rendered by the jury in the defendant's case. *Id*. at 123-125.

In speaking of the proposition of law for which *Powell* stands, *Yeager* stated that *Powell* "reason[ed] that issue preclusion is 'predicated on the assumption that the jury acted rationally.'" *Yeager*, 557 US at 124, quoting *Powell*, 469 US at 68. In distinguishing *Powell* from *Yeager*, the Supreme Court's *sole* focus was on the rationality/irrationality of the verdicts in each case and *not* on the fact that *Powell* involved a single trial while *Yeager* involved the retrial of a defendant. Indeed, not a single justice saw fit to concur in *Yeager* for the purpose of distinguishing that decision

15

from *Powell* on single/multiple trial grounds.  No substantive reference to this reading of *Powell* can be found anywhere in *Yeager*'s majority, concurring, or dissenting opinions.[10]

*Yeager* rejected the government's attempt to rely on *Powell* to label the verdict in *Yeager* as inconsistent because to do so would take "*Powell*'s treatment of inconsistent *verdicts* and import[] it into an entirely different context involving both *verdicts* and seemingly inconsistent *hung counts*."  *Id*.  In rejecting the government's reliance on *Powell*, the Court noted that relevant to the question of what facts the jury has, in fact, determined, a hung count "is evidence of nothing—other than, of course, that [the jury] has failed to decide anything."  *Id*. at 125.  In considering the range of evidence from which one might draw conclusions as to what issues a jury actually and necessarily

---

[10] The majority opinion quotes Justice Scalia's dissent in *Yeager* for the proposition that "[a]s a conceptual matter, it makes no sense to say that events occurring within a single prosecution can cause an accused to be 'twice put in jeopardy.' "  This quotation, however, is removed from context as the next three sentences of Justice Scalia's dissent proceed to discuss how *Dunn* and *Powell* accepted the validity of inconsistent verdicts, but rejected the application of collateral estoppel in the context of an inconsistent verdict. *Yeager*, 557 US at 130 (Scalia, J., dissenting).  Thus, Justice Scalia ultimately relied on *Dunn* and *Powell*, as well as on *Ashe,* to support his position that the inconsistent nature of the verdict in *Yeager* nullified Yeager's reliance on the valid and final acquittal for collateral-estoppel purposes:

> And our cases, until today, have acknowledged that.  Ever since *Dunn v. United States*, 284 U.S. 390, 393 (1932), we have refused to set aside convictions that were inconsistent with acquittals in the same trial; and we made clear in *United States v. Powell*, 469 U.S. 57, 64–65 (1984), that *Ashe* does not mandate a different result.  There is no reason to treat perceived inconsistencies between hung counts and acquittals any differently.  [*Id*.]

When read in full, Justice Scalia's argument is not that *Yeager* understood collateral estoppel differently from *Dunn, Powell*, and *Ashe,* but that *Yeager* applied principles of collateral estoppel because it erroneously concluded that a verdict featuring hung counts and acquittals was not an inconsistent or irrational verdict.

determined, the Court described hung counts as the "*thinnest reed of all.*" *Id*. (emphasis added). Accordingly, unlike *Powell* and *Dunn* in which attempts to rely on collateral estoppel were rejected because the Court was presented with "jury verdicts that, on their face, were logically inconsistent," the mixed verdict of acquittals and *hung counts* in *Yeager* created "merely a *suggestion* that the jury may have acted irrationally." *Id*.

But for the government's failure to persuade the Supreme Court that a hung count supported its claim that the jury acted irrationally, there is no indication that *Yeager* would not have identically applied *Powell* and *Dunn* to defeat the defendant's collateral-estoppel defense. *Id*.[11] Thus, *Yeager* is in no way a departure from *Powell* and *Dunn*, but is fully consistent. *Yeager*, like *Powell* and *Dunn*, assessed the defendant's collateral-estoppel defense by determining what facts the *jury* "actually and necessarily" decided. In the instant case, as in *Powell* and *Dunn*, there is simply no way to know this; in *Yeager*, however, there was.

*Ashe*, like *Powell*, *Dunn*, and *Yeager*, also focused the collateral-estoppel analysis on what "a rational jury" has determined. *Ashe*, 397 US at 444; *Powell*, 469 US at 68. In this sense, *Ashe* makes the existence of a rational jury a prerequisite for any defendant to prevail on a collateral-estoppel defense. Put in practical terms, absent a finding in the defendant's favor that is part of a rational and consistent verdict, the defendant cannot

---

[11] In fact, the primary disagreement between the majority and the dissent in *Yeager* was whether hung counts demonstrated that the jury had acted irrationally. Justice Scalia disagreed with the majority only in viewing the hung counts, in combination with the acquittals, as evidencing that there was "no clear, unanimous jury finding," thus preventing defendant from satisfying his burden under *Ashe*. *Yeager*, 557 US at 132 (Scalia, J., dissenting).

sustain his burden and prevail on a collateral-estoppel defense. In the instant case, defendant cannot establish that the first jury acted rationally when it convicted him of first-degree felony murder while acquitting him of first-degree home invasion, the sole predicate offense supporting the first-degree felony murder charge. Therefore, the subsequent reversal of his conviction for first-degree felony murder neither alters the factual determinations actually and necessarily made by the jury nor serves to turn the jury's otherwise inconsistent and irrational verdict into a consistent and rational verdict.[12] Accordingly, because *Ashe*'s application of collateral estoppel is premised on a "rational jury," *Ashe* too is consistent with *Powell*, *Dunn*, and *Yeager* and serves to undermine defendant's reliance on collateral estoppel to preclude retrial of the first-degree felony murder charge of which his first jury convicted him.

To overlook the factual findings made by defendant's first jury with regard to the first-degree felony murder conviction would also run afoul of *Ashe*'s requirement that a court reviewing a defense of collateral estoppel do so " 'with an eye to all the circumstances of the proceedings.' " *Ashe*, 397 US at 444, quoting *Sealfon*, 332 US at 579. In examining only the jury's *acquittal* on the first-degree home invasion charge and not the jury's *conviction* on the first-degree felony-murder charge, the majority opinion considers only those circumstances of the proceeding that *support* defendant's collateral-estoppel claim, disregarding those circumstances that are *barriers* to his claim.

_____

[12] Defendant does not argue, and no reasonable argument could be made, that this is a case in which the error resulting in the reversal—defendant's being denied his right to represent himself on any of the charges-- somehow explains the jury's irrational verdict as might be the case when, for example, there was some instructional error affecting only the charge on which defendant was convicted by the jury.

18

Regardless of whether a defendant's conviction has or has not been subsequently overturned, it remains that a jury verdict constitutes a "circumstance" of the proceedings and, as such, must be given consideration under *Ashe*.

## C. "LEGAL MEANING"

The majority opinion argues that allowing retrial would give new "legal meaning" to defendant's reversed conviction and permit it to be used against defendant in a manner inconsistent with *Burks*. Respectfully, it is incorrect for three reasons.

First, when the defendant has the burden of establishing that the jury determined an issue of ultimate fact in his favor, and must do so in light of "all the circumstances of the proceeding," the reversed conviction is not being "used to the defendant's detriment." Instead, the jury's findings in convicting defendant are "circumstances" that the defendant is simply unable to overcome in establishing his collateral-estoppel defense. See footnote 3 of this opinion.

Second, determining whether collateral estoppel applies to prohibit retrial focuses on a highly factual analysis. Only the underlying factual elements of defendant's reversed conviction are given continuing effect, not the reversed conviction itself. The distinction between giving effect to factual elements of a reversed conviction and giving continued legal effect to a reversed conviction can be demonstrated by looking at *People v Crable*, 33 Mich App 254; 189 NW2d 740 (1971), a case cited by the majority opinion. *Crable* held that a defendant who testifies cannot be impeached by way of questioning him concerning the fact that he was convicted of an offense when that conviction was

19

later reversed. *Id*. at 257. In this respect, the conviction itself no longer has any relevant legal significance once it has been reversed.

That is not to say, however, that *factual elements* from the first trial, which resulted in the reversed conviction, must also be ignored or disregarded and cannot have any continuing relevant legal significance. For instance, if a hypothetical defendant testified at both trials (his first trial ending with a conviction that was subsequently reversed), and the defendant's testimony at the first trial contradicted his testimony at the second trial, that the conviction from the first trial was reversed would not preclude the prosecutor from impeaching defendant at the second trial with his testimony from the first. Cf. *United States v Havens*, 446 US 620, 627-628; 100 S Ct 1912; 64 L Ed 2d 559 (1980) (holding that because ensuring truthful testimony "is a fundamental goal of our legal system," otherwise excludable evidence may be used for impeachment purposes on cross-examination when the evidence contradicts a defendant's testimony on direct examination). In this sense, while a reversed conviction has no continuing legal significance and the occurrence of such a conviction may not be "used to the defendant's detriment," specific factual elements from the conviction may persist in their legal significance. In the context of a collateral-estoppel defense, it is not the *conviction* that is being used against the defendant in this case but the underlying *factual findings* made by the jury in convicting defendant of the compound offense.[13]

---

[13] In this regard, I do not, as the majority opinion contends, "jump[] over [the] critical step" of recognizing that defendant's conviction was reversed but simply view the reversal as nullifying only the *legal consequences* associated with the conviction and not the *factual elements* of the first trial. The reversal of Wilson's conviction is just not relevant to the collateral-estoppel analysis.

20

Third, and most importantly, the majority opinion's reliance on *Burks* is misplaced as a result of its failure to recognize the full scope of *Burks*'s statement about reversed convictions. The majority opinion quotes *Burks* as follows:

> [R]eversal for trial error, as distinguished from evidentiary sufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect . . . . [*Burks*, 437 US at 15.]

However, the very next sentence of *Burks* premises the proposition that a reversed conviction "implies nothing with respect to the guilt or innocence of the defendant" on the specific fact that when a conviction is reversed, *retrial* is possible:

> When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. [*Id*. at 15-16, citing Note, *Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence*, 31 U Chi L Rev 365, 370 (1964).]

When the ability to retry a defendant on a reversed conviction is foreclosed, the reversal, coupled with the inability to retry the defendant, necessarily implies something about defendant's guilt or innocence. The premise of a collateral-estoppel defense is that, on the basis of factual findings by a jury, defendant cannot be guilty of the charged offense, thus implying something about defendant's guilt or innocence. Despite relying on *Burks*, which held that a reversed conviction "implies nothing with respect to the guilt or innocence of the defendant," the majority opinion employs principles of collateral estoppel to forever foreclose the possibility of retrying defendant for first-degree felony murder, thus in fact implying something significant about defendant's guilt or innocence on that charge.

### III.  MAJORITY OPINION STANDS APART

In foreclosing the state's ability to retry a defendant when a jury returns an inconsistent verdict and the convictions are subsequently overturned, the majority opinion stands apart from all other courts that have addressed this issue.  Unanimous high courts in New Jersey and the District of Columbia have determined that when the jury renders an inconsistent verdict, principles of collateral estoppel have no place even if the convictions that make up the inconsistent verdict are subsequently overturned.  *State v Kelly*, 201 NJ 471; 992 A2d 776 (2010); *Evans v United States*, 987 A2d 1138 (DC, 2010), cert den 131 S Ct 1043 (2011).  Both *Kelly* and *Evans* expressly rejected the comparison that the majority opinion purports to make between a verdict, such as that in *Yeager*, that includes hung counts and acquittals and a verdict that includes acquittals and subsequently reversed convictions.  *Kelly*, 201 NJ at 494; *Evans*, 987 A2d at 1142.  *Evans* stated in this regard:

> The Supreme Court's recent decision in *Yeager* does nothing to undermine this analysis.  The distinguishing feature in *Yeager* was that the jury had acquitted on some counts and hung on others.  The Court treated "the jury's inability to reach a verdict on the insider trading counts [as] a nonevent[,]" 129 S. Ct. at 2367, "hold[ing] that the consideration of hung counts has no place in the issue-preclusion analysis."  *Id*. at 2368.  It explained that the situation was "quite dissimilar" from that presented in *Powell*, where "respect for the jury's verdicts counseled giving each verdict full effect, however inconsistent."  *Yeager*, 129 S. Ct. at 2369.  In *Yeager*, there was no inconsistent verdict of guilt standing in opposition to the acquittals, and the Court held that "conjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return."  *Id*. at 2368.  [*Evans*, 987 A2d at 1142.]

Both *Kelly* and *Evans* understood correctly the threshold premise that principles of collateral estoppel are only applicable when the jury has acted rationally, and in so doing, both *Kelly* and *Evans* relied on *Powell* to resolve the defendants' claims of collateral estoppel. *Kelly*, 201 NJ at 488; *Evans*, 987 A2d at 1141-1142.

Similarly, the United States Court of Appeals for the Second Circuit reached this same conclusion in *United States v Bruno* and found the answer to the issue sufficiently clear to enable it to resolve the case by summary order, stating,

> We see *no merit* to Bruno's argument because, unlike the cases [including *Ashe*] on which he relies (where collateral estoppel barred retrial), Bruno was *convicted* of the offenses that are now the subject of retrial. These convictions are significant because they indicate that, notwithstanding the acquittals, the jury found that Bruno possessed the requisite intent to devise a scheme to defraud. See 18 U.S.C. § 1341 (including intent as an element of mail fraud). While Bruno argues that the now-vacated convictions should be considered a non-event and the jury's determinations on those counts should be ignored, there is *no legal or factual support* for this proposition. [*United States v Bruno*, 531 Fed Appx 47, 49 (CA 2, 2013) (second emphasis added).][14]

In reaching the opposite conclusion, the majority opinion does not cite a single case from a state high court, an intermediate court from another jurisdiction, or a federal court at any level that has resolved the instant question in the fashion that the majority

---

[14] The majority opinion's attempt to diminish the relevance of *Bruno* on the basis that the convicted and acquitted counts in that case did not share in common an issue of ultimate fact does nothing to call into question the *legal* proposition that *Bruno* stands for. The Second Circuit delivered its opinion on the *assumption* that the convicted and acquitted counts shared in common an issue of ultimate fact. *Bruno*, 531 Fed Appx at 49, citing the Brief for Defendant-Appellant at 32 ("Next, Bruno argues that the counts on which he was acquitted reflect a finding by the jury that he 'did not possess the requisite intent to devise a scheme to defraud,' and, therefore that the government is collaterally estopped from charging him with such a scheme now.").

23

opinion resolves it.[15] This leaves Michigan to stand alone on the issue of whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, by way of principles of collateral estoppel, bars retrial when a jury renders an inconsistent verdict and the convictions within the inconsistent verdict are subsequently reversed.

## IV. CONCLUSION

Principles of collateral estoppel are only applicable when a defendant can demonstrate that a rational jury has resolved an issue of ultimate fact in the defendant's favor. A defendant is unable to establish that the jury "actually and necessarily determined any issue of ultimate fact" when it has rendered an inconsistent verdict. Defendant's jury rendered an inconsistent verdict by convicting defendant of the compound offense of first-degree felony murder while acquitting him of the predicate offense of first-degree home invasion. Accordingly, defendant is unable to satisfy his burden of establishing that the jury actually and necessarily determined an issue of ultimate fact in his favor. The majority opinion's contrary decision enables defendant, having once been convicted of first-degree felony murder, to escape retrial and the mandatory "life without parole" sentence that would attend any such reconviction. It reaches this conclusion by an analysis that is novel, singular, and detached from 80 years of federal caselaw concerning constitutional principles of collateral estoppel. I would

---

[15] This is, of course, not to say that this Court is reliant on the decisions of other courts, but merely to point out that the majority opinion has failed to identify a single authority for the proposition it asserts concerning the meaning of *Ashe*, *Powell*, and *Yeager*.

affirm the Court of Appeals and permit the prosecutor to retry defendant for first-degree felony murder.

Stephen J. Markman
Brian K. Zahra
David F. Viviano